Filed 6/25/26  P. v. Tellez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTONIO TELLEZ,<br><br>    Defendant and Appellant. | F089333<br><br>(Super. Ct. Nos. BF192320A, BF191422A)<br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Meehan, J. and DeSantos, J.

# INTRODUCTION

In November 2022, appellant and defendant Antonio Tellez (defendant) pleaded no contest to a felony violation of Penal Code[1] section 273.5, subdivision (a) and admitted two prior strike convictions, pursuant to a negotiated disposition where both prior strikes were dismissed, he was placed on probation for three years, and he would be sentenced to three years in prison if he violated probation.

A few days after being placed on probation, defendant assaulted and threatened a neighbor in his apartment complex. After a jury trial on the charges in the second case, defendant was convicted of felony criminal threats with two prior strike convictions, felony assault, and drug-related misdemeanors. At the sentencing hearing, the trial court denied defendant's request to dismiss the prior strike convictions and sentenced him to the third strike term of 25 years to life for felony criminal threats plus 18 years for the other offenses in that case. At the same hearing, the court revoked probation in the prior plea case, and imposed a concurrent upper term of four years. Defense counsel did not object to the concurrent term as a violation of the earlier plea agreement.

On appeal, defendant contends the trial court abused its discretion when it denied his request to dismiss the prior strike convictions and imposed the third strike term of 25 years to life for criminal threats.

Defendant separately argues that when the trial court revoked probation in his earlier plea case, it improperly sentenced him to a concurrent upper term of four years in violation of the plea agreement's provisions for the midterm of three years.

We find the trial court failed to comply with the plea agreement when it imposed the concurrent upper term of four years after it revoked probation, and it was still bound by the plea agreement to impose the midterm of three years. We otherwise affirm the judgment as modified.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

**FACTUAL AND PROCEDURAL BACKGROUND**

**THE PLEA AGREEMENT (CASE No. BF191422A)[2]**

On August 30, 2022, a complaint was filed in the Superior Court of Kern County case No. BF191422A, charging defendant with committing the following offenses against Jane Doe, an adult, and Jane Doe No. 2, a minor, on or about August 27, 2022:

Count 1: felony attempted residential burglary of a structure occupied by Jane Doe (§§ 664, 460, subd. (a)); with special allegations that he personally used a deadly or dangerous weapon, a knife (§ 12022, subd. (b)(1)); another person, not an accomplice, was present in the residence (§ 667.5, subd. (c)(21)), and there were aggravating circumstances (Cal. Rules of Court, rule 4.421);[3]

Count 2: misdemeanor battery of Jane Doe, a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship (§ 243, subd. (e)(1));

Count 3: misdemeanor willfully and unlawfully, under circumstances or conditions other than those likely to produce great bodily harm or death, caused or permitted a child, Jane Doe No. 2, to suffer, or inflicted unjustifiable physical pain or mental suffering, or having the care or custody of any child, caused or permitted the person or health of that child to be injured, or caused or permitted that child to be placed in a situation that its person or health may be endangered (§ 273a, subd. (b));

Count 4: misdemeanor willfully and unlawfully, in the presence of another person, Jane Doe, while not acting in self-defense, drew or exhibited a deadly weapon, a knife, in a rude, angry, or threatening manner (§ 417, subd. (a)(1));

---

**2** We recite the entirety of the charges filed against defendant in case No. BF191422A because the instant record does not state any facts underlying these offenses.

**3** All further citations to rules are to the California Rules of Court.

Count 5:  misdemeanor willfully, unlawfully, and maliciously defaced with graffiti or other inscribed materials, damaged or destroyed real or personal property, not his own, belonging to Jane Doe, of a value less than $400 (§ 594, subd. (b)(2)(A)); and,

Count 6:  misdemeanor possession of narcotics paraphernalia (Health & Saf. Code, § 11364).

As to felony count 1, it was alleged defendant had four prior strike convictions (§§ 667, subd. (c)–(j)); 1170.12, subd. (a)–(e)) and four prior serious felony conviction enhancements (§ 667, subd. (a)) based on the following convictions in San Bernadino County:  (1) criminal threats (§ 422) in 2003; (2) assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)) with a great bodily injury enhancement (§ 12002.7) in 2005; (3) assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)) with a great bodily injury enhancement (§ 12002.7) in 2008; and (4) burglary (§ 459) in 2018.

Defendant was represented by deputy public defender Patricia Zieglar-Lopez.

**Felony Advisement, Waiver, and Plea Form**

On October 13, 2022, defendant signed a "Felony Advisement of Rights, Waiver and Plea Form" (the plea form) that stated the terms of the negotiated disposition in case No. BF191422A.

The plea form stated the information would be amended to add count 7, a felony violation of section 273.5, subdivision (a), with two prior strike convictions for criminal threats in 2003 (§ 422), and assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)) with a great bodily injury enhancement (§ 12002.7) in 2005; defendant would plead no contest to count 7 and admit the two prior strike convictions; the court would dismiss both prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and dismiss the other charges and allegations; and he would be placed on felony probation for three years.

4.

Defendant initialed each preprinted paragraph that advised him about the nature and consequences of his plea, his constitutional rights, and that he understood and waived those rights.

Defendant initialed the paragraph that stated another term of the plea agreement: if he violated the terms and conditions of probation, his probation could be revoked and he could be sentenced to prison, the county jail, or placed on mandatory supervision "*for a maximum of 3 years*," with "*3*" written into the space on the preprinted form.[4]

Defendant also initialed the paragraph that stated the section 1192.5 advisement, that the trial court could withdraw its approval of the plea agreement: "I understand that the conditional plea I am entering here today is not binding on the judge who sentences me. I understand that if the judge disapproves of this plea and its conditions, I will be permitted to withdraw my plea, my not guilty plea(s) will be reentered, all dismissed charges and cases will be reinstated, and my case will then be scheduled for a preliminary hearing or trial."[5]

Zieglar-Lopez signed the declaration that she reviewed the form with defendant, who understood and waived his rights, and she agreed with defendant's decision to enter into the plea agreement.

---

[4]     A felony violation of section 273.5, subdivision (a) is punishable by two, three, or four years in prison.

As addressed in issue II, *post*, defendant relies on this paragraph in the plea form to argue that the negotiated disposition was for the midterm of three years if he violated probation, and that he was erroneously sentenced to the upper term of four years after he violated probation.

[5]     Section 1192.5, subdivision (c) requires the trial court to give this advisement to the defendant. "The section 1192.5 admonitions can be oral or they can be provided in a written plea form provided by the court in which [a] defendant acknowledges his receipt and understanding of the admonitions." (*People v. Silva* (2016) 247 Cal.App.4th 578, 590, fn. 14.)

**Plea Hearing**

Also on November 10, 2022, the trial court convened a hearing and stated the parties had reached a negotiated disposition. Defendant was present with Zieglar-Lopez.

The trial court stated the negotiated disposition was to amend the information to "add a felony violation of … [s]ection 273.5. That will be for three years felony probation pursuant to [section] 1203.097, and will be credit time served," with a "[c]ourt indicated *Romero*." [6] The plea agreement also stated defendant would plead no contest to a misdemeanor violation of section 148, subdivision (a)(1), resisting arrest, in the unrelated case No. BM973259A, for concurrent local time.

The parties concurred with the trial court's statement of the disposition and stipulated to a factual basis for the plea.

The trial court granted the prosecutor's motion to amend the information to allege count 7, willful infliction of corporal injury resulting in a traumatic condition on a spouse or former spouse, cohabitant or former cohabitant, fiancée, someone with whom the offender had, or previously had, an engagement or dating relationship, or the parent of the offender's child (§ 273.5, subd. (a)), with the two prior strike convictions.

The trial court advised defendant that it would dismiss those "two strikes based on the negotiated plea. That means those strikes will not affect this case, except for the fact that if you violate felony probation, you can be sent to state prison as a result of that violation." The court also advised defendant that if he committed a new felony offense, the prior strike convictions could be used to enhance the punishment. Defendant said he understood.

The trial court asked defendant if Zieglar-Lopez had reviewed and explained to him the advisements and waivers in the plea form about his constitutional rights and the nature and consequences of his plea. Defendant said yes, and he understood and waived

_____

[6]     Section 1203.097 states special terms of probation after conviction of a domestic-violence related offense. (§ 1203.097, subd. (a)(1).)

6.

his rights. Zieglar-Lopez said they discussed the plea agreement, defendant understood the plea agreement, understood and waived his rights, and Zieglar-Lopez agreed with the plea agreement and defendant's waivers.

Thereafter, defendant pleaded no contest to count 7 in case No. BF191422A, a felony violation of section 273.5, subdivision (a), and admitted the two prior strike convictions. The trial court dismissed the other charges and allegations on condition the plea remain in effect. The court stated the protective order it issued on August 30, 2022, would remain in effect.

During the plea hearing, the trial court and the parties did not address the provision in the plea form that defendant would be sentenced to three years if he violated probation.

**The Initial Probation Report[7]**

The initial probation report prepared after defendant's plea stated the terms of his negotiated disposition, as recited above. It recommended the trial court suspend imposition of sentence and admit defendant to probation for three years under certain terms and conditions consistent with the plea agreement.

The probation report stated there was one mitigating factor, that defendant pleaded early in the criminal process. There were four aggravating circumstances: his prior convictions as an adult were numerous; his performance on one grant of misdemeanor probation, two grants of felony probation, and state parole were unsatisfactory because he failed to abide by the terms and/or reoffended; he served a prior prison term; and he was on misdemeanor probation in another case when the crime was committed.

---

[7] We quote the probation report's nonconfidential sentence recommendations for the limited purpose of showing that defendant and defense counsel were advised of the recommendation for the upper term (four years) for count 7 if he violated probation, which was contrary to the plea agreement. (See, e.g., *People v. Connor* (2004) 115 Cal.App.4th 669, 695–696; *People v. Williams* (2021) 63 Cal.App.5th 990, 996, fn. 9.)

The probation report stated that if defendant violated probation and state prison became an issue, "it is felt, after a review of the sentencing options and circumstances listed in mitigation and aggravation, *that the upper term in sentencing is warranted*" for the felony violation of section 273.5, subdivision (a), and "[a]n upper term sentence is permitted as the factors in aggravation stem solely from the defendant's prior record of conviction."

The probation report did not refer to or address the provision in the plea form, that defendant would be sentenced to three years for count 7 if he violated probation, or that the report's recommendation for the upper term of four years was contrary to the plea agreement.

**Grant of Probation**

On November 10, 2022, the trial court convened the sentencing hearing. The court stated it had reviewed the probation department's report and asked if there were any comments. Both parties submitted the matter.

The trial court dismissed the two prior strike convictions attached to count 7 pursuant to *Romero*. The court again reminded defendant that his prior strikes would not "go away," he could be sent to state prison if he violated probation, and the prior strike convictions would be used to enhance the punishment if he committed another felony in the future. Defendant said he understood.

The trial court accepted the plea agreement in case No. BF191422A, and suspended imposition of sentence for count 7, the felony violation of section 273.5, subdivision (a), and admitted defendant to probation for three years, with service of local time and credit for time served. The court advised defendant of the terms and conditions of probation, including to refrain from violations of the law, report to the probation officer, refrain from illegal use or possession of narcotics, successfully complete outpatient substance abuse counseling and a batterer's treatment program, submit to drug

8.

testing, not to commit any act of violence or contact, harass, threaten, or stalk the victims, and police confiscation and destruction of the weapon he used, a knife.[8]

The trial court advised defendant: "You're getting an opportunity here. Don't squander it." The court also advised him that "if you violate probation, you're likely to see a state prison remedy." However, the court did not state the possible prison sentence if he violated probation.

The trial court did not state it was going to withdraw its approval unless defendant agreed to the four-year term if he violated probation. Zieglar-Lopez did not address or object to the initial probation report's recommendation for the upper term of four years if defendant violated probation, as being contrary to the terms in the plea form.

## CRIMINAL THREATS CONVICTION (CASE No. BF192320A)

Shortly after being placed on probation in the plea case, defendant was charged with and alleged to have assaulted and threatened C.M.R. based on the following incident.[9]

### C.M.R. Moves Into the New Apartment

On or about November 14, 2022, C.M.R., his wife J.A.S., and their young children moved into a new apartment in Bakersfield.[10] During the moving process, C.M.R. saw a man in the apartment complex, who he later identified as defendant. C.M.R. did not speak with defendant, and he did not see defendant with a woman. C.M.R. later spoke to

---

[8]    In an unrelated case No. BM973259A, resisting arrest, the trial court imposed a concurrent jail term with credit for time served, consistent with the plea agreement.

[9]    The following facts are from defendant's jury trial in case No. BF192320A.

[10]    It is undisputed that defendant assaulted and threatened C.M.R. on November 14, 2022. C.M.R. testified that defendant attacked him when he left for work on the family's "first morning" in their new apartment. J.A.S. testified they moved into the new apartment "by two days" and they had lived there "for two days" when the incident occurred.

someone at defendant's apartment about the parking spaces. This conversation occurred outside and C.M.R. did not remember who he spoke with.

J.A.S. testified she noticed defendant while they were unloading their property from the moving trailer. At one point, defendant helped her move one item without being asked.[11]

**Defendant Assaults and Threatens C.M.R.**

Around 5:30 a.m. on November 14, 2022, C.M.R. left his apartment to go to his plumbing job. His wife and children were still in bed. He stopped outside the apartment to lock the front door. Defendant immediately approached C.M.R. and asked why he was having sex with defendant's girlfriend, and why C.M.R. was at defendant's place.[12]

C.M.R. replied that he did not know defendant or his girlfriend, and he did not know what he was talking about. C.M.R. testified defendant hit him with his closed fist, and broke C.M.R.'s nose with his first blow. Defendant continued to hit C.M.R.'s face and forehead, and he lost consciousness for perhaps one minute. When C.M.R. regained his senses, he was on his knees and holding himself up with one hand. C.M.R. believed defendant continued to hit him when he was unconscious because he had additional facial injuries, and there was blood on his face and clothing. C.M.R. never raised his arms or fists or tried to strike defendant.

C.M.R. testified he stood up and defendant continued to yell at him. Defendant walked away, and C.M.R. went inside his apartment and locked the door.

---

[11] There is no evidence that C.M.R. or his wife knew defendant prior to moving into their new apartment. Defendant spoke in a mixture of English and Spanish, and C.M.R. understood everything he said.

[12] C.M.R. initially testified defendant accused him of having sex with defendant's girlfriend. Later in C.M.R.'s testimony, he stated that defendant accused him of having sex with defendant's wife, not a girlfriend. In closing and rebuttal argument, the prosecutor referred to this person as defendant's "girlfriend." Defense counsel referred to this person as defendant's "wife" in closing argument.

J.A.S., C.M.R.'s wife, testified she was still in bed when she heard yelling and arguing outside. J.A.S. rushed to the living room and saw C.M.R. return inside the apartment. His face and clothing were covered with blood. C.M.R. told his wife to call 911 and she did so immediately.

C.M.R. testified he remained inside his apartment. Defendant was still outside C.M.R.'s door and again started to yell at him. C.M.R. did not open the door but he looked through a window. C.M.R. saw that defendant was trying to open the door. Defendant had an object in his hand and he was hitting the door with it.

C.M.R. testified that as defendant kept trying to open the door, defendant yelled "[t]hat he was going to get in and that he was going to kill me along with my family …, that he was going to load us up with lead, all of us," and he was going to get a gun. C.M.R. believed defendant meant he was going to kill them.

J.A.S. testified she was on the telephone with the police when she heard someone hitting the door and saw the interior door handle move. She heard defendant yelling for C.M.R. to go outside. J.A.S. testified defendant said, " 'Get out. Get out of here. I've already given you what you well deserved,' " and " 'Oh, you don't want to get out here? Okay. Then you want lead.' " Defendant said he was "going to grab his weapon." J.A.S. believed defendant was threatening to kill her husband and she was extremely afraid. J.A.S. also heard sounds like someone was trying to open the mailboxes near their door.

C.M.R. testified defendant's tone of voice "was capable of terrorizing everyone," and their family hid in another room. Defendant did not get into the apartment.

**Defendant's Arrest and Admissions**

Around 6:30 a.m., Officer Adam Garcia responded to the dispatch and arrived at the apartment complex. There was blood on the ground and sidewalk outside C.M.R.'s apartment. Garcia arrested defendant and took him into custody.

11.

The officers found a knife on the ground by the mailboxes outside C.M.R.'s apartment. The knife's tip was broken off. The tip was found on the ground and it matched the broken part of the knife.

Officer Jesus Azanza advised defendant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, and defendant answered questions. Azanza testified defendant's speech was very rapid, he was sweating, and he appeared to be under the influence of methamphetamine.[13]

In response to Azanza's questions, defendant claimed he saw "this dude" coming out of his apartment a couple of days earlier, and the "dude" had "burned" him. Defendant said he confronted C.M.R. and said what he did was wrong. Defendant said C.M.R replied that defendant's wife was "sweet." Defendant told C.M.R not to disrespect him. Defendant also said he was trying to divorce his wife and get his kids.

Azanza asked defendant if he put "hands" on C.M.R. Defendant said yes, and admitted he "just took off on him." When asked how many times he hit C.M.R, defendant said he punched him five or six times and did not use a knife. Azanza asked defendant if he made any threats against C.M.R. Defendant initially said no, but added: "Yeah, he had to go. They gotta go."

Azanza asked defendant exactly what he said to C.M.R. Defendant answered: "You gotta go man. You know what I mean? Don't even trip. Like I talked to your wife. I got you. Like, you know, I raised kids, you have to go, man. We're trying to clean this shit up like that." Azanza asked defendant if he told C.M.R that he was going to kill him. Defendant replied, "Wish I would."

Azanza asked defendant if the knife found by the officers belonged to him. Defendant said the knife was one of his tools, he didn't know how it was broken, and he

---

[13]     Azanza recorded his interview with defendant on his body-worn camera, and the video was introduced into evidence and played for the jury.

12.

never pulled the knife on C.M.R but "I wanted to." Azanza testified defendant did not have any physical injuries and he never claimed C.M.R. tried to hit him.

## C.M.R.'s Injuries

C.M.R. testified he went to the emergency room that same day. He was in a lot of pain throughout his entire face because of the damage to his nose, and there was blood in his throat. At the time of trial, he was still in pain because he could not breathe properly through one nostril. He remained employed by the same plumbing company, but he was reassigned to less strenuous work and lost the opportunity to earn bonuses from the heavy jobs because he could not engage in physical exertion. C.M.R. could not afford medical treatment to correct his injuries because he did not qualify for health insurance at work and did not have Medi-Cal.

J.A.S. testified their family moved out of that apartment on the same day as the incident because they were afraid of defendant and did not want to be near him. C.M.S. testified that after this incident, whenever someone knocked on their door, "everything comes right back" about defendant "trying to open the door, force the door open, hitting the door."

## The Information

On December 6, 2022, an information was filed in the new case No. BF192320A, charging defendant with committing the following offenses on or about November 14, 2022:

Count 1: felony assault by means of force likely to produce great bodily injury to C.M.R. (§ 245, subd. (a)(4)); that he personally inflicted great bodily injury on C.M.R. (§ 12022.7); and he intended to inflict great bodily injury to C.M.R. (§§ 667, subd. (e)(2)(C)(III); 1170.12, subd. (c)(2)(C)(III));

Count 2: felony willful and unlawful use of force or violence resulting in the infliction of serious bodily injury against the victim (felony battery) to C.M.R. (§ 243,

13.

subd. (d)), and he intended to inflict great bodily injury to C.M.R. (§§ 667, subd. (e)(2)(C)(III); 1170.12, subd. (c)(2)(C)(III));

Count 3: felony criminal threats to C.M.R. (§ 422), that he personally used a dangerous or deadly weapon, a knife (§ 12022, subd. (b)(1)), and he was armed with a deadly weapon (§§ 667, subd. (e)(2)(C)(III); 1170.12, subd. (c)(2)(C)(III));

Count 4: felony criminal threats to J.A.S. (§ 422), that he personally used a dangerous or deadly weapon, a knife (§ 12022, subd. (b)(1)), and he was armed with a deadly weapon (§§ 667, subd. (e)(2)(C)(III); 1170.12, subd. (c)(2)(C)(III));

Count 5: misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a));

Count 6: misdemeanor possession of narcotics paraphernalia (Heath & Saf. Code, § 11364); and,

Count 7: misdemeanor use or being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a)).

It was alleged defendant had two prior strike convictions (§§ 667, subds. (c)-(j); 1170.12, subds. (a)–(e)) and two prior serious felony conviction enhancements (§ 667, subd. (a)) based on the following convictions in San Bernadino County: (1) assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)) with great bodily injury (§ 12022.7) in 2005, and (2) first degree burglary (§ 459) in 2018.

The information was later amended to allege specific aggravating circumstances under rule 4.421.

When the charges involving C.M.R. were initially filed, the trial court again appointed the public defender's office to represent defendant, and several different deputy public defenders appeared at pretrial hearings with him. On May 24, 2024, defendant appeared with Andrew Lockhart, who appeared to be retained counsel. Lockhart represented defendant for the entirety of his jury trial and the sentencing hearing in both cases.

**Revocation of Probation**

On January 17, 2023, the trial court revoked defendant's probation in his earlier plea in case No. BF191422A, based on the new criminal charges filed in case No. BF192320A. The court trailed the probation violation hearing pending resolution of the new charges.

**Jury Trial and Verdicts**

On November 18, 2024, defendant's jury trial began on the new charges in case No. BF192320A.

Prior to the case going to the jury, the trial court dismissed count 5, misdemeanor possession of methamphetamine. In addition, defendant pleaded no contest to misdemeanor counts 6 and 7, possession of narcotics paraphernalia, and using or being under the influence of methamphetamine.[14]

On November 21, 2024, the jury found defendant guilty of count 1, felony assault by means of force likely to produce great bodily injury on C.M.R. (§ 245, subd. (a)(4)), but it was unable to reach a finding on the attached great bodily injury enhancement.[15]

The jury found defendant guilty of count 3, felony criminal threats against C.M.R.

Defendant was found not guilty of count 2, felony battery causing serious bodily injury to C.M.R. (§ 243, subd. (d)), and guilty of the lesser included offense of misdemeanor simple battery on C.M.R. (§ 242).

The jury was unable to reach a verdict on count 4, criminal threats to J.A.S.

---

[14] Defendant pleaded to the two misdemeanor counts before the jury returned the verdicts as to the offenses committed against C.M.R. and J.M.S. In taking his pleas, the trial court advised defendant that his misdemeanor convictions violated the terms of his probation in his prior case No. BF191422A, regardless of what the jury's verdicts were in the pending case. Defendant said he understood.

[15] Since the jury did not return a finding on the great bodily injury enhancement as to count 1, felony assault, that conviction did not constitute a serious or violent felony for which a third strike term could be imposed.

15.

On November 26, 2024, the trial court found true the allegations that defendant had two prior strike convictions and two prior serious felony enhancements, and found the aggravating circumstances true.

## SENTENCING PROCEEDING FOR BOTH CASES

After his convictions in the jury trial, defendant filed a request for the trial court to dismiss the prior strike convictions found true pursuant to *Romero* and section 1385, and attached to count 3, felony criminal threats. Defendant argued (incorrectly) that a third strike sentence could not be imposed for his current conviction in count 3 for felony criminal threats to C.M.R., because it was not a serious or violent felony.[16] Defendant further asserted a third strike sentence would be inappropriate because the threats were made by "words [spoken] through a closed door," and his conduct was outside the scope of the Three Strikes law.

Defendant also argued the two prior strike convictions should be dismissed because they were old, his misdemeanor convictions were for drug offenses and showed his struggles with addiction, and his other offenses did not "demonstrate the type of increasing criminality for which the [T]hree [S]trikes law is intended." Defendant requested a determinate sentence of four years eight months instead of a third strike term.

**The Prosecution's Opposition**

The prosecution filed an opposition, and stated defendant's conviction in count 3 for criminal threats in violation of section 422 constituted a serious felony. The prosecution rejected defendant's assertion that C.M.R.'s fear was unreasonable because he spoke "through a door," and argued the jury rejected this theory when it convicted defendant of felony criminal threats. The prosecution also noted the trial evidence about

---

**16** Criminal threats in violation of section 422 is statutorily defined as a serious felony (§ 1192.7, subd. (c)(38)) for which a third strike sentence may be imposed (§ 667, subd. (d)(1)).

C.M.R.'s continuing fear as a result of the crime, and that his family immediately moved out of the apartment because of their fear of defendant.

The prodecution agreed defendant's conviction in count 1 for felony assault of C.M.R. in violation of section 245, subdivision (a)(4), was not a serious or violent felony, but that did not justify dismissing the two prior strike convictions attached to the serious felony in count 3, criminal threats, because defendant threatened to kill C.M.R. immediately after he assaulted him. The prosecution acknowledged defendant's prior strike convictions occurred several years earlier, but defendant had continuously offended and/or been in prison between his offenses. The prosecution also acknowledged defendant had several drug convictions going back to 2002, and argued he had been given opportunities to reform but failed to do so.

**The Updated Probation Report**

An updated probation report was prepared after defendant's convictions in the jury trial in case No. BF192320A. The report recommended that as to count 3, felony criminal threats to C.M.R. with two prior strike convictions, the trial court should impose the third strike sentence of 25 years to life, plus determinate terms for the other convictions and enhancements.

The probation report also addressed defendant's conviction in the prior plea case No. BF191422A for count 7, a felony violation of section 273.5, subdivision (a). The report recommended revocation of probation and imposition of a concurrent upper term of four years.

The updated probation report did not address the provision in the plea agreement for a three-year sentence for count 7 if he violated probation, or state that the trial court rejected the original plea agreement or the parties modified the terms.

**Sentencing Hearing**

On January 14, 2025, the trial court conducted the sentencing hearing for both case Nos. BF191422A and BF192320A.

17.

## *Case No. BF192320A*

The trial court first addressed case No. BF192320A, where defendant was convicted after the jury trial of criminal threats and assault against C.M.R. Lockhart argued the court should dismiss one or both prior strike convictions because one of the strike convictions was "quite old," and the rest of his record only consisted of a felony conviction from 17 years ago and some misdemeanor offenses. As to count 3, criminal threats to C.M.R., Lockhart argued the court should reduce that offense from a felony to a misdemeanor pursuant to section 17, subdivision (b), because the jury did not find the great bodily injury enhancement true that was attached to count 1, assault.

The prosecutor objected to reducing felony criminal threats to a misdemeanor: "[C.M.R.] testified about how every time he hears a knock on his door, he's reminded of this. How he left his home after this happened because of how much fear he was in. Clearly, this is not just misdemeanor conduct."

The prosecutor acknowledged defendant's conviction in count 1 for assault was not a serious or violent felony, but that did not mean his conviction in count 3, for the serious felony of criminal threats, should be treated with "less seriousness." The prosecutor argued defendant had numerous convictions, "many of which are shortly after one another. It seems that he does have a consistent history of committing offenses, and for that reason, he is within the spirit of the Three Strikes Law."

The trial court denied defendant's request to dismiss the prior strike convictions. It reviewed defendant's criminal record and found he was convicted of assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)) with a great bodily injury enhancement (§ 12002.7), sentenced to seven years, and paroled in 2013. In 2014, he was convicted of possession of a dirk or dagger. In 2016, he was convicted of first degree burglary, sentenced to eight years, and paroled in 2021. In 2022, he was convicted of violating section 273.5, subdivision (a) and placed on probation, and he was still on probation in that case when he committed these additional offenses.

The trial court stated:

> "So although we have a large gap in time between the 2008 strike and the current case, although the [section] 422 is the strike in this [current] case, and although much of your criminal history … is misdemeanor behavior, you haven't been crime free pretty much ever since your first conviction. [¶] You had gaps in time, but that's because you were in custody so, therefore, you don't have additional charges during that time. So I'm not going to strike your strikes. I don't believe it's warranted."

The trial court also denied defendant's motion to reduce his conviction in count 3 for criminal threats from a felony to a misdemeanor: "The jury found a felony conviction. I agree with the jury. That's very clear based on the testimony of the victim and the threats made, not only to him, but by implication or by statement to his family. Both his testimony and that of his wife was compelling. It certainly was compelling to the jury."

As the trial court was about to impose sentence, defendant addressed the court and claimed the two victims had "orchestrat[ed] different stories toward me" and committed "perjury" because they did not have "one straight story." The court stated it did not know what defendant meant, and he was blaming everyone else for what he did and did not take responsibility.

The trial court denied defendant's request to dismiss the two prior strike convictions and denied probation. As to count 3, felony criminal threats to C.M.R., the court imposed the third strike term of 25 years to life plus two consecutive five-year terms for the two prior serious felony conviction enhancements; plus a consecutive upper term of eight years for count 1, felony assault by means likely to produce great bodily injury to C.M.R., for an aggregate term of 18 years plus 25 years to life.

The trial court imposed a jail term for count 2, misdemeanor assault, and stayed that sentence, with concurrent jail terms for the misdemeanor drug offenses in counts 6

and 7. The court dismissed the charges and allegations for which the jury was unable to reach findings.

### *Case No. BF191422A*

The trial court next addressed case No. BF191422A, defendant's prior plea case, where he pleaded no contest to count 7, a felony violation of section 273.5, subdivision (a)(1), he was placed on probation, and then probation was revoked when he was charged in the new case and pleaded to the drug offenses.

The trial court again revoked probation, denied another grant of probation, and imposed the upper term of four years for count 7, to be served concurrently with the term imposed in case No. BF192320A.

Lockhart did not object to the updated probation report's recommendation for the upper term of four years for count 7, or the trial court's imposition of that upper term, even though it was contrary to the provision in the plea form.

## Issues on Appeal

Defendant filed a timely notice of appeal in both cases and raises sentencing issues.

In case No. BF192320A, where he was sentenced to the third strike term of 25 years to life for count 3, criminal threats against C.M.R., defendant argues the trial court abused its discretion when it denied his request to dismiss one or both of the prior strike convictions.

In case No. BF191422A, the prior plea case, where the trial court imposed a concurrent upper term of four years for count 7, defendant argues the upper term violated the terms of his plea agreement that stated he would be sentenced to the midterm of three years if he violated probation.

**DISCUSSION**

**I.  The Trial Court Did Not Abuse its Discretion When it Imposed the Third Strike Sentence**

In case No. BF192320A, defendant argues the trial court abused its discretion when it denied his request to dismiss one or both of the two prior strike convictions and imposed the third strike term of 25 years to life for count 3, felony criminal threats to C.M.R.  Defendant renews the arguments he made before the court, that the prior strike convictions were old, and also argues his commission of the current offense of criminal threats was not within the intended scope of the Three Strikes law to justify the sentence of 25 years to life.

**A.  Section 1385 and *Romero***

The trial court has discretion to dismiss a prior strike conviction in furtherance of justice under section 1385.  (§ 1385, subd. (a); *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at pp. 529–530.)  In considering whether to exercise its discretion, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  To the extent a defendant points to relevant factors not explicitly mentioned by the court, we presume that these factors were considered in reaching its decision.  (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

We review the trial court's sentencing decision under section 1385 pursuant to the deferential abuse of discretion standard.  (*People v. Carmony* (2004) 33 Cal.4th 367, 375–377 (*Carmony*); *People v. Williams*, *supra*, 17 Cal.4th at p. 162.)  The court does not abuse its discretion "unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at p. 377.)  The party challenging the court's

21.

ruling bears the burden to show the sentencing decision was irrational or arbitrary. (*Id*. at pp. 376–377.)

" '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or … '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the [T]hree [S]trikes scheme must be even more extraordinary." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

"[T]he [T]hree [S]trikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

**B. Analysis**

The trial court herein was clearly aware of the scope of its discretion, it considered the parties' arguments and reviewed the pleadings, and it did not abuse its discretion when it denied defendant's request to dismiss one or both of his prior strike convictions.

*__Remoteness__*

Defendant's primary argument is that his prior convictions were old and remote, and mostly consisted of misdemeanor offenses. "In determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on. To be sure, a prior conviction may be stricken if it is remote in time. In criminal law parlance, this is sometimes referred to as 'washing out.' [Citations.] The phrase is apt because it carries the connotation of a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)

"Rather than simply calculating the number of years that have passed since the prior strikes, sentencing courts are to consider whether the defendant's prior strike convictions served 'as a pivot point for reforming his ways.' [Citations.] [¶] In analyzing whether a defendant's prior criminal conduct was 'remote,' a trial court should consider whether the defendant 'was incarcerated a substantial part of the intervening time and thus had little or no opportunity to commit' additional crimes. [Citations.]" (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 390–391 [prior strikes not remote to current offense since defendant was in prison for 13 of the 16 years between prior strike convictions and on parole when he committed the current offense]; *People v. Steele* (2002) 27 Cal.4th 1230, 1245 [defendant's prior crime was not remote under an Evidence Code section 352 analysis where defendant spent many years in prison during the intervening period]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 311–312, ["the remoteness in time of the vacated strike priors was not significant in light of [the] defendant's continuous crime spree, which had substantially spanned his entire adult life. Indeed, [the] defendant was on parole when the present crime was committed."].)

"A prior strike conviction is not considered 'remote' for the purposes of mitigation where the defendant has not demonstrated a prolonged period of rehabilitation (a crime free life) in the interim." (*People v. Vasquez*, *supra*, 72 Cal.App.5th at p. 390.)

23.

The record supports the trial court's rejection of defendant's remoteness argument. It reviewed defendant's record and concluded that although some of his criminal history consisted of misdemeanor behavior, he had not "been crime free pretty much ever since [his] first conviction." The court found the time gaps between offenses were "because you were in custody so, therefore, you don't have additional charges during that time."

Moreover, defendant committed the offenses against C.M.R. just days after being placed on probation in the prior plea case for violating section 273.5, subdivision (a) with the dismissal of the prior strike convictions, and the trial court's admonishment: "You're getting an opportunity here. Don't squander it." The record shows defendant did not live a " 'legally blameless life' " and committed numerous offenses before and after his prior strike convictions. (*People v. Humphrey*, *supra*, 58 Cal.App.4th at p. 813.)

### *Third Strike Sentence for Criminal Threats*

Defendant "recognizes the seriousness of the current offenses and acknowledges his criminal record" and that he is "deserving of significant punishment" for the offenses committed against C.M.R. However, he argues that imposing the third strike sentence for count 3, criminal threats to C.M.R., was "wholly out of proportion to the circumstances" of his commission of the offense. Defendant claims his conviction in count 3 was based on "a heat-of-the-moment statement made without any forethought. The threat was made outside of a closed door with minimal, if no, actual chance of being carried out. [He] was not armed."

Defendant raised a similar argument at the sentencing hearing when he moved for the trial court to reduce his conviction for felony criminal threats to a misdemeanor. The court denied the motion because "[t]he jury found a felony conviction. I agree with the jury. That's very clear based on the testimony of the victim and the threats made, not only to him, but by implication or by statement to his family. Both his testimony and that of his wife was compelling. It certainly was compelling to the jury."

24.

The trial court's finding is supported by the record. Defendant claims his threat to C.M.R. was made in "a heat-of-the-moment statement made without any forethought," it occurred "outside of a closed door with minimal, if no, actual chance of being carried out." and he was "not armed." Defendant's attempt to minimize the incident is refuted by the record. Defendant immediately confronted C.M.R. as soon as he stepped out of the front door of his apartment at 5:30 a.m., which strongly infers defendant was waiting for him in those early morning hours. Defendant made accusations that did not make sense to C.M.R., punched him in the face with a closed fist, continued to hit him, and C.M.R. lost consciousness and fell to the ground. Defendant kept yelling at him when C.M.R. regained consciousness. C.M.R. returned into his apartment and locked the door, and told his wife to call the police. Even though C.M.R. retreated to his apartment, defendant kept yelling at C.M.R., and threatened to kill him and his family, get a gun, and load all of them "up with lead."

While defendant made the threats when C.M.R. was behind the closed front door, both C.M.R. and J.A.S testified that defendant was also trying to open the door at the same time. J.A.S. testified the interior door handle was moving, and C.M.R. looked through a window and saw that defendant kept hitting the door with some type of object. When defendant was arrested, he did not possess a firearm, but the police found a knife and its broken tip on the sidewalk in front of C.M.R.'s apartment. In his post-*Miranda* interview, defendant admitted the knife belonged to him and claimed it was a "tool." The record completely refutes defendant's characterization of his commission of criminal threats as being made without any "forethought," outside of a closed door with "with minimal, if no, actual chance of being carried out."

### ***Defendant's Alleged Intoxication***

Finally, defendant argues "the fact that [he] was under the influence further shows a lack of intent" when he committed count 3, criminal threats, as another reason why the trial court abused its discretion when it declined to dismiss the two prior strikes.

25.

Defendant argues he was "under the influence" when he made the statements to C.M.R., which "evinces a lack of intent" to commit the offense.

We note that defendant filed a pretrial motion to exclude his post-*Miranda* statements. The trial court conducted a hearing and viewed the video from Azanza's body-worn camera that showed the officer gave the *Miranda* advisement, and also showed the entirety of the officer's interview with defendant. Lockhart argued defendant was under the influence of narcotics and his statements were not voluntary. The court denied defendant's motion and found defendant was fully and properly advised, he understood the advisements, and his waiver and statements were voluntary.

Defendant's claims about the alleged effect of intoxication on his threats were rejected by the jury. A violation of section 422 for making criminal threats is a specific intent crime that requires a showing that the defendant intended the statements to be taken as a threat, even if there is no intent to carry out the threat. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1347.) "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent …." (§ 29.4, subd. (b).) Voluntary intoxication may negate the existence of a specific intent. (*People v. Williams* (1997) 16 Cal.4th 635, 677.)

The jury was correctly instructed on the elements of criminal threats, including the requisite intent—that defendant willfully threatened to unlawfully kill or cause great bodily injury to C.M.R., he intended his statement be understood as a threat, and that "[s]omeone commits an act *willfully* when he … does it willingly or on purpose." The jury was also correctly instructed that it could consider evidence of defendant's voluntary intoxication for the limited purpose of deciding whether he acted with the intent or mental state required for count 3, criminal threats; the prosecutor had the burden of proving beyond a reasonable doubt that defendant acted with the specific intent or mental state required for the offense; and if the prosecutor did not meet this burden, the jury must find him not guilty of criminal threats.

Outside the jury's presence, defendant pleaded no contest to the misdemeanor charges of using or being under the influence of methamphetamine, and possession of narcotics paraphernalia. During the trial, however, the jury heard evidence of his alleged intoxication through Azanza's testimony about his interview with defendant, that he appeared under the influence of methamphetamine, and the jury was shown the interview video from Azanza's body-worn camera.

The issues of defendant's intent and voluntary intoxication were thus before the jury. The jury's verdict shows it found beyond a reasonable doubt that he acted with the requisite intent.

## II. The Concurrent Term Imposed in the Probation Revocation case No. BF191422A

Defendant's next issue is based on his prior plea case. As set forth in the factual and procedural background above, defendant entered into the negotiated disposition in case No. BF191422A on October 13, 2022, by signing the plea form that stated the terms and conditions of his plea to count 7, a violation of section 275.3, subdivision (a)—that both prior strikes would be dismissed, the other charges and allegations in that case would be dismissed, he would be placed on probation for three years, and if he violated probation, his probation could be revoked and he could be sentenced to prison, the county jail, or placed on mandatory supervision "*for a maximum of 3 years*," with "*3*" written into the space on the preprinted form. The plea hearing was held on the same day, and defendant stated he had signed and initialed the plea agreement, he understood the terms and conditions of the plea agreement, and Ziegler-Lopez agreed. At the sentencing hearing on his plea held on November 10, 2022, the trial court dismissed the prior strikes and the other charges, and placed defendant on probation for three years.

At the January 12, 2025, sentencing hearing following his convictions in the jury trial, the trial court imposed the third strike sentence of 18 years plus 25 years to life, and then addressed the prior plea case. Defendant now argues that the court improperly

27.

imposed the concurrent upper term of four years for his conviction in count 7, a violation of section 273.5, subdivision (a), in violation of the plea agreement as stated in the plea form, that he would be sentenced to three years if he violated probation.

Defendant acknowledges that at the January 12, 2025 sentencing hearing, Lockhart did not object to the imposition of the upper term of four years in his prior plea case. However, he argues Lockhart was prejudicially ineffective for failing to do so because there was no tactical reason to permit the trial court to erroneously sentence him to a higher term than the parties agreed to at the time of the plea agreement in 2022, the court never withdrew its approval of the plea agreement, and he requests remand for the court to correct the concurrent sentence to three years. The People argue that defendant waived any error by failing to object, and Lockhart likely declined to object to prevent the court from withdrawing its approval of the plea agreement that would have resulted in refiling of felony charges and prior strike convictions in that prior case.

## A.  Plea Agreements

"[T]he process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant and approved by the court. [Citations.] Pursuant to this procedure the defendant agrees to plead guilty [or no contest] in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. [Citation.] This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment [citation], by the People's acceptance of a plea to a lesser offense than that charged, either in degree [citations] or kind [citation], or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information. Judicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution. [Citations.] But implicit in all of this is a process of "bargaining" between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—

28.

which bargaining results in an agreement between them.' " (*People v. Segura* (2008) 44 Cal.4th 921, 929–930 (*Segura*); *People v. Prudholme* (2023) 14 Cal.5th 961, 970.)

The prosecutor is the only party authorized to negotiate on behalf of the state, and the trial court cannot substitute itself in place of the prosecutor. (*Segura*, *supra*, 44 Cal.4th at p. 930.) " 'Such judicial activity would contravene express statutory provisions requiring the prosecutor's consent to the proposed disposition, would detract from the judge's ability to remain detached and neutral in evaluating the voluntariness of the plea and the fairness of the bargain to society as well as to the defendant, and would present a substantial danger of unintentional coercion of defendants who may be intimidated by the judge's participation in the matter.' " (*Ibid.*)

"Because a 'negotiated plea agreement is a form of contract,' it is interpreted according to general contract principles. [Citation.] Acceptance of the agreement binds the court and the parties to the agreement. [Citations.] ' "When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement." ' " (*Segura*, *supra*, 44 Cal.4th at pp. 930–931.)

"Although a plea agreement does not divest the court of its inherent sentencing discretion, '*a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain*. [Citation.] "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citation.] *Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, [either] directly or indirectly*. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." ' " (*Segura*, *supra*, 44 Cal.4th at p. 931, italics added.)

"For its part, of course, the trial court may decide not to approve the terms of a plea agreement negotiated by the parties. [Citation.] If the court does not believe the

29.

agreed-upon disposition is fair, the court 'need not approve a bargain reached between the prosecution and the defendant, [but] it cannot change that bargain or agreement without the consent of both parties.' " (*Segura*, *supra*, 44 Cal.4th at p. 931.)

"When the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b).)

"Thus, a court may not modify the terms of a plea agreement while otherwise leaving the agreement intact, 'nor may the court effectively withdraw its approval by later modifying the terms of the agreement it had approved.' " (*People v. Brooks* (2020) 58 Cal.App.5th 1099, 1107.) When a court accepts a plea bargain, it must impose a sentence within the limits of that bargain. (*Segura*, *supra*, 44 Cal.4th at p. 931, *People v. Cunningham* (1996) 49 Cal.App.4th 1044, 1047.)

## B. Analysis

It is well settled that "a criminal defendant cannot argue for the first time on appeal" that the trial court "aggravated a sentence based on items contained in a probation report that were erroneous or otherwise flawed." (*People v. Scott* (1994) 9 Cal.4th 331, 351–352; *People v. Victorian* (1992) 2 Cal.App.4th 954, 958.)

At the November 2022 sentencing hearing after his plea, Zieglar-Lopez did not object to the recommendation in the initial probation report for imposition of the upper term of four years for count 7 if defendant violated probation. After his conviction in the jury trial in 2022, Lockhart did not object to the same recommendation stated in the updated probation report. As noted by the People, Lockhart also failed to object to the trial court's actual imposition of the concurrent upper term of four years at the 2025 sentencing hearing, as a violation of the earlier plea agreement.

Defendant raises the alternate argument that Lockhart was prejudicially ineffective for failing to object to the trial court's imposition of the concurrent upper term for count 7 at the sentencing hearing. "To prevail on a claim of ineffective assistance, a defendant must show both that counsel's performance was deficient—it fell below an objective standard of reasonableness—and that defendant was thereby prejudiced. [Citation.] Such prejudice exists only if the record shows that but for counsel's defective performance there is a reasonable probability the result of the proceeding would have been different. [Citation.] To prevail on a claim of ineffective assistance on appeal ' " 'the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission.' " ' " (*People v. Cash* (2002) 28 Cal.4th 703, 734.) " 'In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

The People argued that during the plea proceedings, defendant's deputy public defender, Ziegler-Lopez, may not have objected to the recommendation in the initial probation report for the upper term for count 7, to avoid the possibility that the trial court would have withdrawn its approval of the plea before it placed defendant on probation. During the plea proceedings in 2022, however, the court never indicated its disapproval of the plea agreement that included a three-year sentence if he violated probation. After receiving the initial probation report, the court never stated it was going to withdraw its approval of the plea unless the parties agreed that defendant would be sentenced to the upper term of four years if he violated probation. Indeed, the record strongly indicates the opposite, that despite the recommendation in the initial probation report for the upper term, the court did not withdraw its approval of the plea agreement. Instead, the court followed the terms of the plea agreement at the November 10, 2022 hearing—it

31.

dismissed the two prior strike convictions, placed defendant on probation for three years, and warned defendant that he would be sentenced to prison if he violated probation.

Defendant was represented by different attorneys during the plea case in 2022, and the jury trial and sentencing hearing in 2024. The entirety of the record strongly infers that by the time of the January 12, 2025 sentencing hearing, the trial court and the parties were unaware of the terms and conditions of the plea agreement, that the court did not withdraw its approval of the plea agreement, the plea agreement was never modified, and the probation report's recommendation of the upper term violated the terms and conditions of the plea agreement as agreed to by the prosecution and defendant in 2022.

Indeed, there is no evidence that during the plea proceedings in 2022, the trial court agreed with the initial probation report's recommendation for four years instead of three years for count 7, that it was going to withdraw its approval of the plea agreement unless the parties agreed that defendant would be sentenced to the upper term of four years if he violated probation, or that the plea agreement was so modified with the agreement of the parties. Instead, it appears the probation officer unilaterally recommended the upper term without consideration of the plea agreement for the midterm of three years.

As explained above, when a trial court accepts a plea bargain, it must impose a sentence within the limits of that bargain. (*Segura*, *supra*, 44 Cal.4th at p. 931; *People v. Cunningham*, *supra*, 49 Cal.App.4th at p. 1047.) The court may not modify the terms of a plea agreement while otherwise leaving the agreement intact, "nor may the court effectively withdraw its approval by later modifying the terms of the agreement it had approved." (*Segura*, at pp. 931–932; *People v. Brooks*, *supra*, 58 Cal.App.5th at p. 1107.)

Defendant is not seeking a sentence outside the terms of the plea agreement but seeking to enforce the plea agreement. When a guilty plea " 'is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum

punishment, both parties, including the state, must abide by the terms of the agreement.' " (*People v. Panizzon* (1996) 13 Cal.4th 68, 80.)  Therefore, we direct modification of the abstract of judgment in case No. BF191422A to reflect the sentence agreed to by the parties and approved by the trial court in 2022—that defendant should be sentenced to the midterm of three years for count 7, to run concurrent to the third strike sentence in case No. BF192320A.

## DISPOSITION

The trial court is directed to prepare an amended abstract of judgment in case No. BF191422A, that defendant was sentenced to the midterm of three years for count 7, to run concurrent to the sentence imposed in case No. BF192320A.  The amended abstract of judgment shall be disseminated to the appropriate authorities.  As modified, the judgment is affirmed.